# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

| | |
|---|---|
| Luisa Chavez-Lavagnino and Debra Yanez, | Civil No. 10-14 (DWF/XXX) |
| Plaintiffs, | |
| v. | MEMORANDUM OPINION AND ORDER |
| Motivation Education Training, Inc., and Amy Cerna, | |
| Defendants. | |

_____

Brian E. Cote, Esq., Cote Law Firm, Ltd., counsel for Plaintiffs.

Michael J. Minenko, Esq., Minenko & Hoff, and Moises R. Hernandez, Esq., Hernandez Law Firm, LLP, counsel for Defendants.
_____

## INTRODUCTION

This case concerns retaliatory discharge claims. The matter is before the Court on a Motion for Summary Judgment brought by Defendant Motivation Education Training, Inc. ("MET") and Defendant Amy Cerna (collectively, "Defendants"). For the reasons set forth below, the Court denies Defendants' motion.

## BACKGROUND

Plaintiffs Debra Yanez and Luisa Chavez-Lavagnino were formerly employed by MET, a non-profit corporation. Cerna was their supervisor at MET, and MET continues to employee her today. According to its website, MET operates on a statewide basis in Texas, Louisiana, Minnesota, North Dakota, and Wyoming and is "a private nonprofit

501(c)(3) organization funded by a variety of public and private grants and contracts."
(http://www.metinc.org/about/about.html, last visited January 4, 2011). "The
organization was founded for the purpose of providing academic and vocational training
to migrant and seasonal farm workers, with the objective of furthering economic
self-sufficiency for MET participants." *Id*. Recently, MET has broadened its scope "to
include initiatives that target low-income and disadvantaged populations throughout the
agency's service area." *Id*.

Yanez began working at MET's New Ulm office on June 24, 2008, as a Core
Service Specialist ("CSS"). Yanez, who is Caucasian, informed MET when she was
hired that she did not speak Spanish. As a CSS, Yanez assisted clients in New Ulm
office; tracked and ordered office supplies; supported the office's manager; helped to
establish a better relationship with the Minnesota Workforce Center; and worked with
colleges to become MET partners. Maria Davila became Yanez's manager in
September 2008. MET provided Yanez and Davila with little training, and, in fact,
Yanez provided some training to Davila when Davila first began working for MET.
Although Yanez received no performance review during her employment with MET,
Davila testified in her deposition that she considered Yanez to be a good employee.
Yanez's employment with MET ended on December 12, 2008.

Chavez-Lavagnino, who is from Guatemala, began working in MET's Rochester
office on September 8, 2008 as a Client Service Representative ("CSR"). Cerna hired
Chavez-Lavagnino and told her to initially focus on community outreach since the
Rochester office was a new location for MET. As a CSR, Chavez-Lavagnino distributed

flyers; sent letters to potential MET partners; contacted local colleges, the Minnesota Workforce Center and daycare centers; and assisted clients in the office. Cerna terminated Chavez-Lavagnino on May 1, 2009.

In their respective positions, both Yanez and Chavez-Lavagnino were required to assist MET clients in completing applications in order for MET to determine if the clients were eligible to receive benefits, which were most often from federal grants. Plaintiffs did not themselves make eligibility determinations but simply collected the applications and related documents and forwarded them on to Cerna for determining eligibility. The crux of Plaintiffs' allegations stem from their assertions that Cerna instructed them to forge client signatures and/or client information in order to make MET's clients meet certain eligibility requirements that would entitle those clients to certain federal benefits, which in turn would increase MET's client numbers. Both Yanez and Chavez-Lavagnino contend that when they refused to comply with Cerna because they believed that they were against the law, Cerna became belligerent and verbally abusive.

## DISCUSSION

Summary judgment is proper if there are no disputed issues of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The Court must view the evidence and the inferences that may be reasonably drawn from the evidence in the light most favorable to the nonmoving party. *Enter. Bank v. Magna Bank of Mo.*, 92 F.3d 743, 747 (8th Cir. 1996). However, as the Supreme Court has stated, "[s]ummary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed

3

'to secure the just, speedy, and inexpensive determination of every action.'" *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986) (quoting Fed. R. Civ. P. 1).

The moving party bears the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. *Enter. Bank*, 92 F.3d at 747. The nonmoving party must demonstrate the existence of specific facts in the record that create a genuine issue for trial. *Krenik v. County of Le Sueur*, 47 F.3d 953, 957 (8th Cir. 1995). A party opposing a properly supported motion for summary judgment may not rest upon mere allegations or denials but must set forth specific facts showing that there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986).

## I. Count One

In Count One of the Complaint, Plaintiffs allege a claim for retaliatory discharge against MET under Minnesota's so-called "whistleblower" statute, Minn. Stat. § 181.932, subd. 1(3).[1] That statute provides, in relevant part:

> Prohibited action. An employer shall not discharge, discipline, threaten, otherwise discriminate against, or penalize an employee regarding the employee's compensation, terms, conditions, location, or privileges of employment because:
> . . .
>
> (3) the employee refuses an employer's order to perform an action that the employee has an objective basis in fact to believe violates any state or federal law or rule or regulation adopted pursuant to law, and the employee informs the employer that the order is being refused for that reason; . . .

---

[1] Plaintiffs voluntarily dismissed their report claims against MET under Minn. Stat. § 181.932, subd. 1(1). (Doc. No. 43 at 2.)

Minn. Stat. § 181.932, subd. 1(3). The statute provides an employee who has been injured by a violation of § 181.932 with the remedy of bringing a civil action to recover any and all damages recoverable at law, together with costs and disbursements, including reasonable attorney fees, and such injunctive and other equitable relief as determined by the court, in addition to any remedies otherwise provided by law. Minn. Stat. § 181.935(a).

Minnesota courts apply the *McDonnell Douglas* burden shifting analysis to claims filed under the whistleblower statute. *Cokley v. City of Otsego*, 623 N.W.2d 625, 630 (Minn. Ct. App. 2001). In order to establish their prima facie case, a plaintiff must show: (1) statutorily-protected conduct by the employee; (2) adverse employment action by the employer; and (3) a causal connection between the two. *Id*. If the employee can establish a prima facie case, the burden of production shifts to the employer to articulate a legitimate, non-retaliatory reason for its action. *Id.* If the employer meets its burden of production, the employee must demonstrate that the employer's articulated justification is pretextual. *Id*.

### A. Prima Facie Case

With respect to both Plaintiffs, MET asserts that it is entitled to summary judgment on Count One because neither can establish their prima facie cases.

#### 1. Statutorily Protected Conduct

Apparently conceding that Plaintiffs can establish the "order" aspect of a claim under subd. 1(3), MET asserts that Plaintiffs have produced no evidence to show that

they had an objective basis in fact to believe that Cerna's directive to forge signatures or to falsify other information on clients' forms violated a law because (1) Plaintiffs have failed to identify which federal or state law or rule was violated or suspected of being violated and (2) Plaintiffs have not shown that they knew or asked MET or any regulatory agency whether what Cerna ordered them to do was illegal. At the motion hearing, however, MET conceded that signing someone else's name is generally illegal, unless someone has permission to do so. Nevertheless, MET maintained that the whistleblower statute requires Plaintiffs to have more than a "personal opinion" that some action violates a federal or state statute. Specifically, MET suggested that Plaintiffs were required to either know that a law was violated, make an inquiry into whether Cerna's directives were illegal, or show that some harm flowed from Cerna's directives.

In response, Plaintiffs rely on their deposition testimony, in which they describe how Cerna instructed them to forge signatures or falsify other information to help MET be successful and to keep their jobs. Yanez describes how Cerna told her how to trace client signatures by taping documents to a window and copying their signatures. Yanez also stated in her deposition that Cerna instructed her to practice tracing signatures, and after she did so approximately two times, Yanez refused to do any more and told Cerna "I'm not doing it. I'm not going to jail." (Doc. No. 45, Ex. 2 at 23, 53.) Chavez-Lavagnino also told Cerna that she would not falsify information because "that is a federal offense that I am not willing to [m]ake, to go to jail and lose the little things or the big things that I have in this country and my freedom and my daughter's custody." (*Id*., Ex. 1 at 48-49.)

6

Viewing the evidence in the light most favorable to Plaintiffs and rejecting MET's argument that believing forgery is a crime is merely a "personal opinion," the Court concludes that there are genuine issues of material dispute concerning whether Plaintiffs had an objective factual basis for believing that Cerna's directives violated a law. *Cf., Abraham v. County of Hennepin*, 639 N.W.2d 342, 354-55 (Minn. 2002) (discussing subd. 1(1) and explaining that a claim "need not identify the specific law or rule that the employee suspects has been violated, so long as there is a federal or state law or rule adopted pursuant to law that is implicated by the employee's complaint"); *Erickson v. City of Orr*, No. A05-481, 2005 WL 2277395, at *4 (Minn. Ct. App. Sept. 20, 2005) (explaining that whistleblower statute does not require that the employer explicitly order employee to violate the law but that clear pressure or other implied conduct could be sufficient).

### 2. Adverse Employment Action

MET concedes that Chavez-Lavagnino can establish that there was an adverse employment action because there is no dispute that Cerna terminated Chavez-Lavagnino on May 1, 2009. With respect to Yanez, MET asserts that there was no adverse employment action because Yanez never returned to work after requesting sick leave. MET points to Yanez's testimony in which she conceded that she spoke to Cerna about the possibility of returning to work for MET. In response, Yanez states that Davila called her at home on December 12, 2008, and fired her. Yanez points to Davila's testimony in which Davila stated that Cerna had instructed Davila to terminate Yanez because of Cerna's opinion of Yanez's job performance and because of Yanez's inability to speak

7

Spanish. Yanez also highlights the facts surrounding an allegedly fabricated, unsigned resignation letter in her personnel file.

Viewing the evidence in the light most favorable to Plaintiffs, the Court concludes that there are genuine issues of material fact with respect to whether Yanez suffered an adverse employment action.

### 3. Causal Connection

MET asserts that Plaintiffs cannot establish a causal connection between an alleged statutorily protected activity and alleged adverse employment action because the time periods between the allegations are too remote. Specifically, with respect to Chavez-Lavagnino, there was at least a one-month time gap between the last time Cerna allegedly ordered Chavez-Lavagnino to forge information and her termination. With respect to Yanez, there was a five-month time gap. MET also points out that Plaintiffs had, at other times, refused Cerna's directives and suffered no consequences. Plaintiffs respond that the whistleblower statute does not have a *per se* temporal requirement and that the timeframe was necessarily longer than in other cases because Cerna and Plaintiffs worked in different offices. Viewing the evidence in the light most favorable to Plaintiffs and considering the case law cited by both parties, the Court concludes that there are genuine issues of material fact with respect to whether Plaintiffs can establish the third prong of their respective prima facie cases.

### B. Legitimate, Non-Retaliatory Reasons and Pretext

MET asserts that it had legitimate reasons for Chavez-Lavagnino's termination. It relies on Cerna's affidavit to show that Chavez-Lavagnino was terminated for

unsatisfactory performance and failure to meet client enrollment goals. MET does not provide a reason for Yanez's termination, based on its assertion that she voluntarily left MET. It also contends that Plaintiffs cannot show that its proffered reasons are pretextual.

In response, Plaintiffs assert that Cerna told Chavez-Lavagnino to focus on community outreach, not client enrollment, and, for that reason, there was no legitimate reason to terminate Chavez-Lavagnino. Plaintiffs also maintain that Yanez was terminated and explained that Yanez informed Cerna when Yanez was hired that she did not speak Spanish and they point to Davila's testimony that Yanez was a good employee. Viewing the evidence in the light most favorable to Plaintiffs, the Court concludes that genuine issues of fact remain with respect to these issues. Therefore, the Court denies MET's motion with respect to Count One.

## II. Count Two

In Count Two of their Complaint, Plaintiffs assert a common law claim for retaliatory discharge against both MET and Cerna. (*See* Doc. No. 24 (discussing Cerna's potential liability under the common law).) The parties agree that Minnesota courts recognize a very narrow common law claim for wrongful termination in violation of public policy. To state a claim for common law wrongful discharge, the employee must show that he or she was discharged for "refusing to participate in an activity that the employee, in good faith, believes violates any state or federal law or rule or regulation adopted pursuant to law." *Phipps v. Clark Oil & Refining Corp.*, 408 N.W.2d 569, 571 (Minn. 1987); *Nelson v. Productive Alternatives, Inc.*, 715 N.W.2d 452, 455 (Minn.

2006). The parties also agree that this common law claim is evaluated using the same test as is used for Plaintiffs' whistleblower claim, although one claim focuses on an "objective basis in fact" verses a "good faith belief." Given this and because genuine factual disputes preclude summary judgment with respect to Count One, the Court must also deny Defendants' motion with respect to Count Two.

## CONCLUSION

This case has an unusual record. Plaintiffs submitted their own deposition testimony describing how Cerna instructed them to forge documents, and Plaintiffs also submitted Davilo's deposition testimony in which she, too, describes how Cerna instructed her to "move numbers around" so clients would qualify for federal benefits because, according to Davilo, Cerna told her "in order for us to get clients in the door and keep our jobs, that's what we have to do." (Doc. No. 45, Ex. 3 at 27, 28.) To rebut these allegations, Defendants simply submitted an affidavit by Cerna in which she avers that her statements in her Answer are true and accurate, and she explains why Chavez-Lavagnino was terminated. (Doc. No. 38 at ¶ 7.) Where is Cerna's deposition? The Court can only speculate as to why neither party submitted it or why she was never deposed. It also leaves the Court wondering if MET understands the seriousness of the allegations made against it. As the Court stated at the motion hearing, these allegations, if true, should be of interest to the federal government, and for this reason, the Court is forwarding a copy of this Order to B. Todd Jones, the United States Attorney for the District of Minnesota.

Accordingly, **IT IS HEREBY ORDERED** that:

1. Defendants' Motion for Summary Judgment (Doc. No. [35]) is **DENIED**.

Dated: January 13, 2011          s/Donovan W. Frank
                                 DONOVAN W. FRANK
                                 United States District Judge