UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| Luisa Chavez-Lavagnino and<br>Debra Yanez, | Civil No. 10-14 (DWF/SER) |
| Plaintiffs, | |
| v. | **MEMORANDUM**<br>**OPINION AND ORDER** |
| Motivation Education Training, Inc.,<br>and Amy Cerna, | |
| Defendants. | |

Brian E. Cote, Esq., Cote Law Firm, Ltd., counsel for Plaintiffs.

Michael J. Minenko, Esq., Minenko & Hoff, and Moises R. Hernandez, Esq., Hernandez Law Firm, LLP, counsel for Defendants.

**INTRODUCTION**

This matter is before the Court on a Motion for Judgment as a Matter of Law brought by Defendants Motivation Education Training, Inc. ("MET") and Amy Cerna (together, "Defendants") (Doc. No. 119); a Motion for Attorney's Fees and Pre-and Post-Judgment Interest brought by Plaintiffs Luisa Chavez-Lavagnino and Debra Yanez (together, "Plaintiffs") (Doc. No. 125); Motions to Alter or Amend the Judgment brought by Plaintiffs (Doc. Nos. 117 and 118); and a Motion for Review of Taxation of Costs brought by Defendants (Doc. No. 146). For the reasons set forth below, the Court denies Defendants' motion for judgment as a matter of law and motion for review of taxation of

costs, and grants in part and denies in part Plaintiffs' motion for attorney's fees and interest and Plaintiffs' motions to alter or amend the judgment.

## BACKGROUND

Plaintiffs Debra Yanez and Luisa Chavez-Lavagnino were formerly employed by MET, a non-profit corporation. Cerna was their supervisor at MET. MET is a private, nonprofit organization, founded for the purpose of providing academic and vocational training to migrant and seasonal farm workers. Yanez began working at MET's New Ulm office on June 24, 2008, as a Core Service Specialist ("CSS"). Chavez-Lavagnino began working in MET's Rochester office on September 8, 2008 as a Client Service Representative ("CSR").

In their respective positions, both Yanez and Chavez-Lavagnino were required to assist MET clients in completing applications in order for MET to determine whether the clients were eligible to receive benefits, most often funded by federal grants. Plaintiffs did not themselves make eligibility determinations but simply collected the applications and related documents and forwarded them on to Cerna so that she could determine eligibility.

Plaintiffs brought this lawsuit for retaliatory discharge under the Minnesota Whistleblower Statute and Minnesota common law, alleging that Cerna instructed them to forge client signatures and/or client information in order to make MET's clients meet certain eligibility requirements that would entitle those clients to certain federal benefits, which in turn would increase MET's client numbers. Both Yanez and Chavez-Lavagnino

contend that when they refused to comply with Cerna's requests because they believed that they were against the law, Defendants retaliated against them.

On January 13, 2011, the Court denied Defendants' Motion for Summary Judgment, finding that genuine factual disputes existed as to Plaintiffs' claim for retaliatory discharge against MET and common law claim for retaliatory discharge against MET and Cerna.

This matter was tried to a jury trial on May 10-13, 16, and 17, 2011. The jury returned its verdict on May 17, 2011. The jury found that MET discharged Plaintiffs in violation of Minnesota statutory law and that Defendants discharged Plaintiffs in violation of Minnesota common law. The jury also awarded Chavez-Lavagnino $53,183.42 and Yanez $35,241.67 for lost wages up to the time of the verdict on May 17, 2011. The jury declined to award either Plaintiff damages for pain, suffering, and emotional distress. The issue of front pay was not raised in Plaintiffs' Complaint, in the discussion of damages submitted in Plaintiffs' Amended Proposed Jury Instructions (Doc. Nos. 99, 100), or in the final Jury Instructions (Doc. No. 106).[1] Defendants now move for judgment as a matter of law, seeking to overturn the jury verdict. Plaintiffs

---

[1] The Jury Instructions do mention "damages that are reasonably certain to be sustained in the future," but they indicate that these future damages "may include pain, suffering, embarrassment, emotional distress, or injury that plaintiff is reasonably certain to experience in the future." (Doc. No. 106 at 12–13.) The Jury Instructions do not mention front pay. Moreover, Plaintiffs did not raise the issue of front pay, whether as an issue of actual damages to be submitted to the jury or as an equitable remedy to be decided by the Court, until after the verdict had been returned on the other issues in the case. Front pay was never asserted or otherwise alleged at any time during the proceedings, including the pretrial conference or during the trial; it was raised for the first time in Plaintiffs' post-trial motions.

move to alter or amend the judgment to include an award of front pay to both Plaintiffs and to include the married name of Defendant Amy Cerna, which is Amy Cerna-Espinoza.  In addition, Plaintiffs move for an award of attorney's fees and costs and awards of pre-and post-judgment interest.  Defendants have also submitted a motion for review of taxation of costs.

## DISCUSSION

### I. Judgment as a Matter of Law

The Court must decide as a matter of law whether the evidence was sufficient to create an issue of fact for the jury.  *Lane v. Chowning*, 610 F.2d 1385, 1388 (8th Cir. 1979).  In considering a motion for judgment as a matter of law, the Court must: (1) consider the evidence in the light most favorable to the prevailing party; (2) assume that the jury resolved all conflicts in the evidence in favor of the prevailing party; (3) assume as proved all facts that the prevailing party's evidence tended to prove; and (4) give the prevailing party the benefit of all favorable inferences that may reasonably be drawn from the facts proved.  *Haynes v. Bee-Line Trucking Co.*, 80 F.3d 1235, 1238 (8th Cir. 1996).  "Reversible error occurs '[o]nly when there is a complete absence of probative facts to support the conclusion reached.'"  *Inacom Corp. v. Sears, Roebuck & Co.*, 254 F.3d 683, 688–89 (8th Cir. 2001) (quoting *Lavender v. Kurn*, 327 U.S. 645, 653 (1946)).

#### A. Plaintiffs' Testimony

Defendants first contend that Plaintiffs' testimony was conclusory and cannot support the jury's verdict. Defendants submit that Plaintiffs' testimony regarding forged

4

signatures, shredded documents, falsified case notes, and ineligible beneficiaries who received MET benefits never reached beyond the conclusory stage, cannot support the jury's verdict, and is disputed by uncontradicted testimony submitted by Defendants. Defendants argue that Plaintiffs failed to satisfy any of the elements necessary to prevail on their retaliation claims.

The Court respectfully rejects Defendants' assertion that insufficient evidence exists to support the jury's finding that Defendants discharged Plaintiffs in violation of Minnesota law.  Here, the jury was permitted to accept Plaintiff Yanez's testimony that she was directed to forge client signatures and that Defendant Cerna told her in a handwritten note that her "signature needs to look better."  Similarly, the jury heard Plaintiff Chavez-Lavagnino's testimony that she refused requests to falsify signatures and case notes, as well as corroborating testimony from other witnesses, explaining that these case notes contained information used to support MET's applications for grant renewals. At trial, the jury was also permitted to accept Maria Davila's testimony that, in her opinion, the majority of clients who received benefits through the New Ulm office were knowingly made eligible with false information.  Plaintiffs testified that Defendant Cerna instructed them to "move numbers around" to ensure that clients qualified for benefits. (Doc. No. 137 at 3–5.)  The evidence at trial provided a basis for the jury's conclusion that Defendants unlawfully discharged Plaintiffs after Plaintiffs refused to falsify client signatures and information.

Significantly, the key issue in the case was a credibility issue.  If the jury concluded that the Plaintiffs were telling the truth and found the testimony credible, they

would recover damages in some amount. If the jury found the Defendant's witnesses credible with their explanation of what happened, there would have been a verdict for the Defendants, given the paramount issue of credibility. Consequently, the jury had a decision to make with respect to whom to believe. By their verdict, there can be no question that the jury concluded that the Plaintiffs' testimony was credible. On the record before this Court and the jury, there was clearly a reasonable basis in fact for the jury to reach the verdict that they did. Defendants are therefore not entitled to judgment as a matter of law on this basis.

### B. Protected Conduct

Defendants next contend that they are entitled to judgment as a matter of law based on a lack of evidence that Plaintiffs engaged in protected conduct. Defendants argue that the shredded documents were extra copies, that the allegedly falsified progress notes were never shown to the federal government, and that Plaintiffs relied on their own subjective understanding of Department of Labor eligibility requirements when describing the allegedly illegal conduct. Defendants contend that a reasonable person must have believed the conduct was illegal, and they argue that a reasonable person could not have believed that Plaintiffs' actions violated any state or federal law, rule, or regulation adopted pursuant to law. (Doc. No. 121 at 6, 7.)

Defendants also argue that the Minnesota Whistleblower Act requires that an employee act in good faith when refusing to engage in the allegedly unlawful conduct. The Minnesota Whistleblower Act includes a good faith requirement for employees making a report against their employers. Minn. Stat. § 181.932, subd. 1(1). However,

the Act prohibits an employer from discharging or otherwise penalizing an employee who refuses to engage in unlawful conduct, and a refusing employee need only show that she had an "objective basis in fact" to believe that the conduct would be illegal.  Minn. Stat. § 181.932, subd. 1(3).  Considering the evidence in the light most favorable to Plaintiffs, the jury was justified in concluding that Plaintiffs had an objective basis in fact to believe that falsifying applicants' information to obtain benefits was against the law.  The jury determined that there were probative facts to support this conclusion.  Again, with the centrality of the credibility issue, the jury had a decision to make, and they made it.  The jury found the Plaintiffs' testimony credible.  As noted above, there was clearly a reasonable basis in fact for the jury to reach the verdict that they did.  Therefore, the Court will not overturn the jury's verdict on this ground, and Defendants are not entitled to judgment as a matter of law on this basis.

    **C.**    **Adverse Employment Action**

Defendants also argue that they are entitled to judgment as a matter of law because Plaintiff Yanez was offered reinstatement after being fired, and she thus did not suffer an adverse employment action.  The Court respectfully rejects this argument.  The jury accepted Yanez's testimony (as well as the testimony of Maria Davila) that Davila terminated Yanez on December 11, 2008, upon instruction from Cerna.  Defendant Cerna's subsequent effort to reinstate Yanez does not negate the fact that Yanez suffered an adverse employment action, especially considering her testimony that Davila had been taking away her work leading up to her termination, and that she had endured verbal berating by Cerna after refusing to falsify signatures.

To satisfy the adverse employment action requirement of the Minnesota Whistleblower Act, an employee must show that the employer's conduct resulted in a "material change in the terms or conditions of her employment." *Leiendecker v. Asian Women United*, 731 N.W.2d 836, 841 (2007) (quoting *Lee v. Regents of Univ. of Minn.*, 672 N.W.2d 366, 374 (Minn. Ct. App. 2003)).  The jury concluded that the conditions leading up to Yanez's termination, coupled with her termination in December 2008, constituted an adverse employment action.  The Court finds that the jury's conclusions are supported by the evidence presented, and Defendants are not entitled to judgment as a matter of law on this basis.

**D.      Causal Connection**

Defendants next assert that they are entitled to judgment as a matter of law because no causal connection exists between Plaintiffs' alleged protected conduct and their termination.  The Court rejects this argument.  Defendants knew of Plaintiffs' refusals, and Defendant Cerna directed that Plaintiffs be terminated.  The jury justifiably inferred a retaliatory motive from these circumstances.

In a retaliation case, an employee may demonstrate a causal connection between an event and an adverse employment action using circumstantial evidence.  *Krutchen v. Zayo Bandwidth Northeast, LLC*, 591 F. Supp. 2d 1002, 1015 (D. Minn. 2008).  Close temporal proximity is one way to establish an inference of reprisal.  *Id.*  However, evidence of causal connection has been found even in cases where an employee was demoted or terminated months after reporting unlawful conduct.  *See Tretter v. Liquipak Int'l, Inc.*, 356 N.W.2d 713, 715 (Minn. Ct. App. 1984) (finding inference of causal

8

connection established under Minnesota Human Rights Act when employee was demoted three months after making a report about her manager and was terminated six months later). In the present case, Plaintiffs allege that Defendant Cerna waited to fire Yanez until another employee was available to replace her. (Doc. No. 137 at 11.)

Defendants contend that Plaintiffs were terminated for legitimate performance-related deficiencies, not in retaliation for their refusals. An employer may be entitled to judgment as a matter of law "if the record conclusively reveal[s] some other, nondiscriminatory reason for the employer's decision, or if the plaintiff created only a weak issue of fact as to whether the employer's reason was untrue and there was abundant and uncontroverted evidence that no discrimination had occurred." *Reeves v. Sanderson Plumbing Prods.*, 530 U.S. 133, 148 (2000). In this case, however, Defendants have failed to conclusively show, with "abundant and uncontroverted evidence" that Plaintiffs were discharged for a nondiscriminatory reason. The Court finds that the jury reasonably inferred that Plaintiffs were terminated for their refusal to falsify information. Defendants are thus not entitled to judgment as a matter of law on this basis.

### E. Individual Liability for Defendant Cerna

Defendants argue that Defendant Cerna cannot be held liable in an individual capacity. Defendant Cerna previously filed a motion to dismiss on this ground. (Doc. No. 4.) The motion was granted with regard to Plaintiffs' statutory claim, but denied with respect to their common law claims. (Doc. No. 24.) The Court stands by this decision and concludes that Defendant Cerna may be held liable in an individual capacity

for a common law claim of wrongful discharge. The Court notes that deciding otherwise would not affect the outcome of the case; the verdict would remain the same notwithstanding a decision to the contrary.

## II.     Plaintiffs' Motion to Amend the Verdict

### A.     Front Pay

Plaintiffs request that the Court alter its judgment to include front pay awards to Chavez-Lavagnino and Yanez. They propose that front pay would serve as an equitable remedy to the discharged Plaintiffs in place of reinstatement, which they consider impractical.

Defendants, however, argue that Plaintiffs' claims for front pay are procedurally barred. Defendants contend that front pay is not equitable relief, but is rather a component of actual damages, which Plaintiffs failed to submit to the jury. (Doc. No. 131 at 2–4.) Therefore, Defendants allege that the Court should not be permitted to authorize front pay after damages have been submitted to the jury. In the alternative, Defendants argue that reinstatement is a preferred alternative remedy to front pay and that Plaintiffs have failed to show a desire to be reinstated or a capability of performing the job. A refusal or inability to return to work, they argue, means that front pay should not be awarded. (*Id.* at 9–13.)

The Court agrees that front pay is not available to Plaintiffs in this instance. Front pay may be awarded by a court for lost compensation that occurs after the time of trial. *Ray v. Miller Meester Adver., Inc.*, 684 N.W.2d 404, 406 (Minn. 2004). Under Minnesota law, a front pay award is treated as a form of actual damages, as the "natural,

necessary and usual result" of an employer's discriminatory behavior and is limited to the damages caused by the employer's breach. *Id.* at 407. In *Mathieu v. Gopher News Co.*, 273 F.3d 769, 782 (8th Cir. 2001), the Eighth Circuit explained that "this circuit treats front pay as an equitable remedy, not damages" and that "the Supreme Court has clearly stated that front pay is not included in the measure of compensatory damages under Title VII." In *Ray v. Miller Meester Advertising, Inc.*, however, the Minnesota Supreme Court "decline[d] to follow the Eighth Circuit's interpretation of Minnesota law because its analysis is almost wholly based on federal case law under Title VII." *Ray v. Miller Meester Advertising, Inc.*, 684 N.W.2d at 409. Thus, Minnesota law treats front pay as an award of actual damages, which must be submitted to a jury. As discussed above, the issue of front pay was not raised in Plaintiffs' Complaint, nor was it included in Plaintiffs' Amended Proposed Jury Instructions or in the final instructions submitted to the jury. The Court therefore declines to award front pay to Plaintiffs in this case.[2]

### B. Motion to Amend Defendant's Name

Plaintiffs request to amend the judgment to include the marital name of Defendant Amy Cerna, which is Amy Cerna-Espinoza. The Court grants this request.

---

[2] The Court would arrive at the same decision even if the Court were to determine that, contrary to the holding of *Ray v. Miller Meester Advertising, Inc.,* 684 N.W.2d 404 (Minn. 2004), front pay is an equitable remedy. The issue of front pay was not presented or otherwise reserved by Plaintiffs at any time during the trial. The Court suggests to the parties that it would respectfully characterize Plaintiffs' position regarding front pay as an afterthought, given the procedural history of the case and the fact that no evidence was put before the Court or the jury on the issue.

**III.     Motion for Attorney's Fees and Costs and Pre- and Post-Judgment Interest**

Plaintiffs argue that they are entitled to an award of attorney's fees and costs against Defendant MET under the Minnesota Whistleblower Act and that Minnesota Statute § 549.09, subd. 1(b), entitles them to an award of pre- and post-verdict interest. Although Defendants concede that the award of attorney's fees is permitted by the Minnesota Whistleblower Act, Defendants contend that Plaintiffs' estimate of attorney's fees and costs is excessive, not specific, and fails to deduct costs incurred asserting unsuccessful claims.  (Doc. No. 131 at 15–24.)

In determining reasonable attorney fees, the Court begins by calculating the "lodestar"—the product of the number of hours reasonably expended on the litigation and the reasonable hourly rate at which those hours should be billed.  *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983).  The reasonableness of a fee depends upon a number of factors, including "the plaintiff's overall success; the necessity and usefulness of the plaintiff's activity in the particular matter for which fees are requested; and the efficiency with which the plaintiff's attorneys conducted that activity."  *Jenkins v. Missouri*, 127 F.3d 709, 718 (8th Cir. 1997).

Plaintiffs' counsel supports the request for fees with billing records setting forth the time expended on the matter.  It must be observed by this Court that the record speaks for itself as to how highly contested this matter was from the very beginning with motion practice and the posture that the defense took in the case, including the post-trial motions that have been filed.  The Court believes attorney Brian Cote's rate of $275 per hour is reasonable.  However, the Court has reviewed the billing records and the parties'

arguments and finds that Plaintiffs' fee request contains charges that are excessive. The Court concludes the same work could have been performed by a law firm of similar experience in approximately ninety percent of the time. Thus, the Court concludes that Plaintiff's fee request is appropriately reduced by ten percent and that a fee award in the amount of $95,106 (ninety percent of $105,673.33) is fair and reasonable. The Court therefore awards a total of $95,106 to Plaintiffs in attorney's fees.

Plaintiffs also seek $8,536.90 in litigation costs. Defendants counter that general expenses, such as postage and copying, are part of normal overhead, for which Plaintiffs are not entitled to receive compensation. Plaintiffs have submitted a properly documented bill of costs, itemizing such expenses as witness fees, transcripts, courtesy copies to chambers, mileage, postage, copying, and online research. These amounts are reasonable, and the Court grants Plaintiffs a total of $8,536.90 in litigation costs, an amount which includes costs previously taxed by the Clerk of Court.

With respect to interest, Defendants contend that Plaintiffs' first request was filed on June 21, 2011 at 12:02 a.m., five days after the deadline to file a motion to amend the judgment, and is thus untimely. (Doc. No. 131 at 2.) Plaintiffs filed a notice of intent to claim attorney's fees and costs four days after judgment was entered (Doc. Nos. 115 and 116), within the window required by Local Rule 54.3(b)(2) and Federal Rule of Civil Procedure 54(d)(2). The parties subsequently stipulated to a briefing schedule for post-trial motions, and the Court was advised of the schedule. Plaintiffs were to file and serve motions and supporting documents for post-trial motions by June 20, 2011, opposition documents were to be served and filed by June 30, 2011, and reply

memoranda were to be served and filed by July 11, 2011. On June 2, 2011, in a timely filed motion, Plaintiffs requested to alter/amend the judgment to include an award of front pay and to change Defendant Cerna's name to her married name. Plaintiffs then filed their motion for attorney's fees and costs and for an award of pre- and post-judgment interest at 12:02 a.m. on June 21, 2011. The Court concludes that this motion was timely and thus not barred.[3]

Plaintiffs are entitled to pre-verdict interest in the amount of ten percent per year, computed from the time of the commencement of the action (December 14, 2009) until the date judgment was entered (May 19, 2011).[4] The Court also awards post-judgment interest in the amount of ten (10) percent per year, pursuant to Minn. Stat. § 549.09, subd. 1(c)(2), which shall accrue from the date of entry of judgment in this action on May 19, 2011, until the judgment is paid. Because Plaintiffs' claims were decided in the same action, the Court concludes that the Plaintiffs' combined judgments exceed the $50,000 bar contained in Minn. Stat. § 549.09, and therefore the Court applies the interest rate of ten (10) percent per annum.[5]

---

[3]   While the Court acknowledges that technically, the motions were filed after the June 20, 2011 deadline for post-trial submissions, the Court finds that no prejudice resulted to any party from the two minute delay, and thus declines to strike the motions.

[4]   Minn. Stat. § 549.09, subd. 1(b)–(c).

[5]   Minn. Stat. § 549.09 provides that for a judgment or award of $50,000 or less, interest shall be computed as simple interest based on the secondary market yield of one year United States Treasury bills. For a judgment or award over $50,000, the interest rate shall be ten percent per year. Minn. Stat. § 549.09. In the present case, Plaintiffs' combined judgments are greater than $50,000; thus, the Court applies the ten percent rate.

### IV. Motion for Review of Taxation of Costs

Defendants have also filed a motion for review of taxation of costs. (Doc. No. 146.) Defendants argue that the Clerk should not have taxed and allowed fees for printing in the amount of $2,155. (Doc. No. 145.) However, as Plaintiffs explain (Doc. No. 148), Defendants are mistaken that the Clerk allowed $2,155 for printing fees. This amount was claimed in the Clerk's Summary of Costs as witness fees, which the Clerk was permitted to tax.[6] Defendants also argue that because they have made a renewed motion to this Court for Judgment as a Matter of Law, it is unclear whether Plaintiffs have prevailed for the purposes of awarding taxable costs to the prevailing party. Therefore, they argue, the Clerk's decision regarding the taxation of costs is premature. Because the Court has denied Defendants' motion for judgment as a matter of law, this motion is also denied.

### ORDER

Based on the files, records, and proceedings herein, and for the reasons set forth above, **IT IS HEREBY ORDERED** that:

1. Defendants' Motion for Judgment as a Matter of Law (Doc. No. [119]) is **DENIED**.

---

[6] The Court notes that the taxation of costs summary (Doc. No. 145, Ex. 1) correctly lists the $2,155 as witness fees; however, the cost judgment (Doc. No. 145) mistakenly lists the $2,155 as fees for printing. This discrepancy appears to be a clerical error.

15

2. Plaintiffs' Motion for Attorney's Fees and Costs and Pre- and Post-Judgment Interest (Doc. No. [125]) is **GRANTED, IN PART, AND DENIED, IN PART**, as follows:

    a. Plaintiffs are entitled to $95,106.00 in attorney's fees.

    b. The Court awards Plaintiffs litigation costs in the amount of $8,536.90.

    c. Plaintiffs are entitled to pre-verdict interest at the rate of ten (10) percent per annum from the date this action was commenced until the date judgment was entered, an amount which totals $7,845.70 for Plaintiff Chavez-Lavagnino and $5,198.92 for Plaintiff Yanez.

    d. Plaintiffs are entitled to post-judgment interest at the rate of ten (10) percent per annum until the judgment is paid.

3. Plaintiffs' Motions to Alter or Amend the Judgment (Docs. No. [117] and [118]) are **GRANTED, IN PART, AND DENIED, IN PART**, as follows:

    a. To the extent Plaintiffs seek an award of front pay, these motions are **DENIED**.

    b. To the extent Plaintiffs seek to amend the Judgment to include the married name of Defendant Amy Cerna, which is Amy Cerna-Espinoza, the motions are **GRANTED**.

4. Defendants' Motion for Review of Clerk's Decision Regarding Taxation of Costs (Doc. No. [146]) is **DENIED**.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Dated:  December 22, 2011         s/Donovan W. Frank
                                              DONOVAN W. FRANK
                                              United States District Judge